# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| DWAYNE WILLIAMS,<br><br>　　　　Petitioner,<br><br>vs.<br><br>WILLIAM SPERFSLAGE,<br><br>　　　　Respondent. | No. C17-4-LTS<br><br>**MEMORANDUM OPINION<br>AND ORDER ON PETITION<br>PURSUANT TO 28 U.S.C. § 2254** |

## I.   INTRODUCTION

This case is before me on petitioner Dwayne Williams' petition (Doc. No. 1) for writ of habeas corpus. Both parties have filed merits briefs (Doc. Nos. 40, 45) and Williams has supplemented his brief (Doc. Nos. 41, 42, 46). Oral argument is not necessary. N.D. Iowa L.R. 7(c).

## II.   BACKGROUND FACTS

The Iowa Court of Appeals summarized the facts of Williams' conviction as follows:

> At about 10:50 p.m. on January 25, 2009, Michael Ohlenkamp went to the Kwik Star gas station on Franklin Street in Waterloo to buy some groceries. When Ohlenkamp went into the store, he left his vehicle unlocked with the engine running. As Ohlenkamp was inside, video surveillance from the gas station shows a person wearing a black coat with an unfastened belt hanging from it, a white hooded sweatshirt, dark pants, white tennis shoes, and a dark baseball cap open the passenger door to Ohlenkamp's two-door vehicle and get into the backseat.
>
> 　　After purchasing his items, Ohlenkamp returned to his car and began to drive home. As Ohlenkamp exited the gas station parking lot, the person in his backseat grabbed his hair, pulled his head back, and held a knife to his throat. Ohlenkamp attempted to grab the knife, but the knife was

tightened against his throat and a male voice told him to let go or he would be killed. The man then demanded money, to which Ohlenkamp replied that he did not have any.

Ohlenkamp was instructed to pull into a Kum & Go gas station approximately five to six blocks down Franklin Street. Ohlenkamp did and parked in front of the store. The man demanded Ohlenkamp's change. Ohlenkamp complied and grabbed "a couple bucks" in coins from his pockets. As Ohlenkamp handed the change to the man in the back seat, some of the coins fell onto the floor. When the man let go of Ohlenkamp's hair to pick up the coins, Ohlenkamp exited his vehicle, shut the door, and stood by the driver's side door watching the man. After the man picked up the coins, he exited from the vehicle's passenger side. Ohlenkamp looked directly at the man for a few seconds and was able to see him "perfectly clear," before the man flipped his white hood over his head and calmly walked away.

Lori Snyder, the Kum & Go sales manager, noticed something was wrong as soon as she saw Ohlenkamp park his vehicle. She could see Ohlenkamp leaning back toward the backseat and suspected that someone else was in the car. She called 911 at 10:56 p.m. As Snyder was speaking with the 911 dispatcher, she walked out of the store. At this time, Ohlenkamp was exiting his vehicle followed by another person crawling out of the backseat through the passenger side door. Although Snyder did not see the face of the person crawling from the backseat, she did observe that the person was a tall and skinny black male wearing a black jacket with a white hooded sweatshirt pulled over his head. Snyder watched the man nonchalantly walk around the west side of the store.

As Snyder continued to speak with the dispatcher, others were able to flag down a police officer driving by. The officer was given a description of the man, which was broadcasted as a black male wearing a white hooded sweatshirt. The officer was also pointed in the direction that the man fled.

At 10:58 p.m., approximately three blocks away from the Kum & Go gas station, police saw a man fitting the suspect's description walking down the street by himself. The police turned a spotlight on him and ordered the man to show his hands and get on the ground, but the man ignored them and continued to walk. The officers then noticed the man fidgeting with something in his pockets. When the police officers yelled for a second time, the man stopped and fell into a snow bank with his hands pushed into the snow underneath him. The man was handcuffed and

identified as Williams. After Williams was placed into the back of a squad car, officers discovered a knife buried in the snow bank.

At 11:07 p.m., the officers returned Williams to the Kum & Go to see if Ohlenkamp or Snyder could make an identification. As they drove back to the gas station, Williams shook the baseball cap from his head.

At 11:08 pm, Williams was removed from the squad car in handcuffs and his baseball cap was returned to his head. Williams stood by the gas pumps under the lighting of the canopy, while Ohlenkamp and Snyder stood inside the gas station's front doors. As Williams stood by the pumps, his hood was put over his head. Ohlenkamp identified Williams as the robber and told the police that he was positive. Snyder confirmed that Williams' clothing and build was "a perfect match" to the robber. Ohlenkamp and Snyder were later taken to the police station where they provided written statements.

At the police station, Williams's clothing was seized. He was wearing a black leather coat with a missing belt, a dark baseball cap with a white star on the front of it, a white hooded sweatshirt, dark jeans, and white tennis shoes. Williams was also found with $ 2.15 in coins on his person.

Weeks after the incident, Ohlenkamp discovered a black belt on the floor of the back seat of his vehicle. The belt did not belong to him, and no one had been in his car since the incident. Ohlenkamp believed the belt belonged to the robber, so he took it to the police. The belt matched Williams' black coat, and pictures from the night of the incident confirmed that it was in Ohlenkamp's vehicle at that time.

*State v. Williams*, No. 10-1254, 2011 WL 5394366, at *1-3 (Iowa Ct. App. Nov. 9, 2011).

### III. PROCEDURAL HISTORY

#### A. *State Proceedings*

Williams was charged by trial information on February 5, 2009, with one count of robbery in the first degree in violation of Iowa Code § 711.2. *Id*. at *3. During trial, the victim identified Williams as the robber and stated, "I am one hundred percent positive that's him." *Id*. In his defense, Williams presented testimony from Otto

3

MacLin, an associate professor in the psychology department at the University of Northern Iowa. *Id.* MacLin testified to the procedures normally used to ensure positive identifications but did not offer an opinion as to whether the identification procedures used in Williams' case conformed with the standards. *Id.* The jury returned a guilty verdict. *Id.* Williams was sentenced to 25 years' imprisonment and, under Iowa law, must serve at least 70 percent of that sentence. *Id.*

On direct appeal, Williams argued that his trial counsel was ineffective for failing to file a motion to suppress based on the allegedly-flawed identification procedures. *Id.* at *1. The Iowa Court of Appeals denied Williams' claim on the basis that he could not establish the "prejudice" element, given the independent evidence that corroborated the identification. *Id.* at *4. Williams timely filed an application for further review with the Iowa Supreme Court, which was denied on February 3, 2012.

Williams filed a state postconviction relief (PCR) action on August 7, 2012. Williams had issues with his counsel during this case. His first appointed attorney was removed after Williams asserted that they had a breakdown in communication and counsel informed the court that she had a potential conflict of interest. Doc. No. 22-5; Doc. No. 22-7; Doc. No. 22-8. Williams filed a motion to remove his second appointed counsel after an apparent disagreement over the merits of some of Williams' PCR claims. Doc. No. 22-9. This motion was denied. Doc. No. 22-10. Williams then filed a motion to void the first order removing his first appointed attorney. Doc. No. 22-11. This was denied. The second appointed attorney does not appear to have filed anything substantive on Williams' behalf. The PCR petition was summarily dismissed September 18, 2013, for failing to state a claim. While Williams alleged that the trial court violated his rights by allowing him to represent himself, the record demonstrated that he was represented by counsel during his trial. Doc. No. 22-16.

Williams filed a second PCR petition on February 4, 2014. He argued that his conviction was invalid because (1) he was present at a preliminary hearing without the assistance of counsel, (2) the trial information was not properly signed or approved by a

judge, (3) the state failed to formally arraign him, (4) the clerk's office failed to provide transcripts of pre-trial hearings, (5), the state violated his right to a speedy indictment, (6) the state violated his right to a speedy trial, (7) the clerk's office, judges, and prosecuting attorney committed misconduct by falsifying documents in the court trial, (8) the Iowa court did not have jurisdiction over his trial, and (9) his trial, appellate, and first PCR counsel were ineffective. After a hearing, the Iowa District Court denied the second PCR petition. Doc. No. 23-37. Specifically, the court found that the first eight grounds lacked factual support in the record and that Williams failed to establish that his trial and appellate counsel breached an essential duty in failing to object as to any of these issues. Regarding the effectiveness of PCR counsel, the court found that Williams could not establish the "prejudice" element because PCR counsel's errors in the first PCR action did not prevent Williams from having the second petition reviewed on the merits.

Williams appealed the dismissal of his second PCR action and the Iowa Court of Appeals affirmed. *Williams v. State*, No. 15-0819, 2016 WL 4384564 (Iowa Ct. App. Aug. 17, 2016). Williams filed a timely application for further review with the Iowa Supreme Court, which was denied on November 28, 2016.

## B.    *Federal Proceedings*

Williams filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 3, 2017. Doc. No. 1. Litigation ensued over whether the petition was timely. On March 23, 2018, I concluded that it was. *See* Doc. No. 19. Respondent William Sperfslage filed a response (Doc. No. 24) to the petition on May 9, 2018. Williams filed his merits brief (Doc. No. 40) on January 28, 2019, and subsequently filed several supplements to his brief. *See* Doc. Nos. 41, 42, 46. Sperfslage filed his merits brief (Doc. No. 45) on April 17, 2019. This matter is ready for decision.

## IV.    SECTION 2254 STANDARDS

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "As amended by [the Antiterrorism and Effective Death Penalty Act of 1996,] AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Section 2254(a) provides that a federal court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. A federal court's review of a state court decision under § 2254 is deferential. *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). A state court decision on the merits should not be overturned unless it

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Considering the merits of habeas claims, the Eighth Circuit has stated:

> The "contrary to" clause and "unreasonable application" clause of § 2254(d)(1) have independent meaning. The contrary to clause suggests that the state court's decision must be substantially different from the relevant precedent of the Supreme Court. An unreasonable application of Supreme Court precedent occurs when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context. In determining whether the state court unreasonably applied Supreme Court precedent, our inquiry is an objective one.

*Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 821 (2017) (cleaned up).

Section 2254(b)(1)(A) prohibits a grant of habeas relief on behalf of a person in state custody unless that person has "exhausted the remedies available in the [state] courts[:]"

> The exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment. The requirement prevents a federal court from granting a habeas petition based on a constitutional violation that could be redressed adequately by pursuing an avenue of state relief still open to the habeas applicant at the time he files his application in federal court.

*Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011) (cleaned up). "To satisfy the exhaustion requirement, [the petitioner] must show that he either made a fair presentation of his claims to the state courts or that he has no other presently available state remedies to pursue." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999). Claims are not exhausted—that is, have not been "fairly presented" to the state court—unless "the state court rules on the merits of [the petitioner's] claims, or [the petitioner] presents his claims in a manner that entitles him to a ruling on the merits." *Id*. In Iowa, a petitioner must first file a PCR petition in the Iowa District Court. If that petition is denied, then the petitioner must exhaust their appeals within the Iowa appellate court system. *See, e.g. Welch v. Lund*, 616 F.3d 756, 758-59 (8th Cir. 2010) (describing Iowa's court system).

## V. DISCUSSION

Williams states four grounds for relief: (1) he was denied due process and equal protection of Iowa's postconviction statutes due to ineffective assistance of his state PCR counsel; (2) his due process, equal protection, speedy trial and assistance of counsel rights were violated when he appeared at and waived a preliminary hearing without counsel, under a trial information that Williams alleges was not properly signed; (3) trial counsel was ineffective for failing to object to the constitutional violations raised in ground two; and (4) direct appeal counsel was ineffective for failing to discover and raise on appeal

7

the constitutional violations raised in ground two.[1] Sperfslage denies that Williams is entitled to relief. I will consider each of Williams' arguments.

A.  *Ineffective PCR Counsel*

Williams argues that he received ineffective assistance of counsel during his first state PCR proceeding in violation of his Sixth Amendment rights because (a) his first appointed PCR counsel failed to inform him of a potential conflict of interest until 11 months had passed and (b) his second appointed PCR counsel failed to represent him or file anything on his behalf. Williams contends that the second PCR court unreasonably applied federal law in rejecting this claim.

Ground one fails to state a federal claim for relief under § 2254. There is no Sixth Amendment right to counsel in postconviction cases. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Section 2254(i) states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Thus, regardless of how the Iowa state courts analyzed Williams' claims, ground one is not reviewable. Further, Williams does not elaborate upon or explain his equal protection or due process claims. Relief will be denied as to ground one.

B.  *Preliminary Hearing Issues*

For ground two, Williams essentially argues that he was never properly arraigned and brought under the jurisdiction of the state court due to a multitude of procedural violations. Williams claims there was never a properly signed trial information and that

---

[1] A section labeled "Ground Five" claims that "[t]he state courts applied an unreasonable interpretation of federal law, as determined by the U.S.S Supreme Court, and an unreasonable interpretation of the facts in light of the evidence presented." Doc. No. 1 at 3. This is the standard for evaluating § 2254 claims and does not state an individual ground for relief. To the extent ground five is intended to state a separate claim for relief, it is denied.

he was forced to attend a preliminary hearing while not represented by counsel. Williams alleges that these procedural errors resulted in a violation of his due process and equal protection rights,[2] as well as a violation of his right to counsel at an adversarial proceeding. Williams further alleges a speedy trial violation, although he does not elaborate.[3] Sperfslage responds that Williams has not exhausted this claim. Although he presented these procedural errors to the PCR court on review, he presented them as ineffective assistance of counsel claims rather than as independent constitutional violations. Sperfslage further argues that the state court's findings of fact related to these allegations – determining that they were not true – controls.

In reviewing the state court order denying PCR, it appears that Williams did present the procedural errors alleged in ground two as both an independent basis for overturning his conviction and errors supporting a finding of ineffective assistance of counsel. *See* Doc. No. 23-37 at 2 (describing the "ten grounds upon which relief should be granted" raised by Williams). The Iowa state court had the opportunity to consider whether any of the alleged errors resulted in a constitutional violation and apparently determined that they did not (because it did not find Williams' description of the alleged errors to be true). Thus, Williams has exhausted the claims raised in ground two.

However, Sperfslage is correct that the state court's findings of fact on this issue control. 28 U.S.C. § 2254(e)(1) provides:

---

[2] Again, Williams does not elaborate on the alleged equal protection violation. As a result, his equal protection claim is denied.

[3] Before the state court, Williams' arguments were focused on Iowa's statutory speedy trial rights. However, "[a] *state* statute . . . has no bearing on whether the State violated [petitioner's] *federal* right to a speedy trial as protected by the Sixth Amendment." *Stewart v. Nix*, 972 F.2d 967, 970 (8th Cir. 1992). The federal standard considers the "length of delay, reason for delay, the defendant's assertion of the right, and prejudice to the defendant." *Id.* (citing *Baker v. Wingo*, 407 U.S. 514, 530 (1972)). Williams does not argue these factors (and, in any event, it would be impossible to find in his favor given the facts as developed in the state court proceedings). Instead, he focuses on the alleged conspiracy to falsify the documents showing that he was properly brought before the Iowa court in his case. *See* Doc. No. 40.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id.* In his attempt to displace the state court's findings of fact on this issue, Williams has submitted correspondence between himself and the state clerk of court in which he attempted to seek filings that either do not exist or which were not within the custody of the clerk's office. *See* Doc. No. 46 and attachments. These appear to be the same documents considered by the state court in rejecting Williams' arguments.

After a hearing on April 7, 2015, the state court judge made the following findings of fact related to the alleged procedural errors:

> First, Mr. Williams alleges he was personally present at a preliminary hearing on February 5, 2009. Mr. Williams claims neither his attorney nor the prosecuting attorney was present and during the hearing the Court provided him with a written waiver of preliminary hearing to sign. The record does not support Mr. Williams' claim. Additionally, any issues Mr. Williams may raise regarding a preliminary hearing are irrelevant. Once the State of Iowa files a Trial Information approved by a judge, no preliminary hearing is necessary. *State v. Petersen*, 678 N.W.2d 611, 613 (Iowa 2004). Here, the State of Iowa filed a Trial Information and therefore, no preliminary hearing was necessary.
>
> Second, Mr. Williams alleges the State filed a Trial Information that was not endorsed by the prosecuting attorney and was not approved by a judge in violation of Iowa Rules of Criminal Procedure 2.5(2) and 2.5(4). The record does not support Mr. Williams' claim. Iowa Rules of Criminal Procedure 2.5(2) and 2.5(4) require the prosecuting attorney to endorse the Trial Information as "a true information" and require a judge to approve the Trial Information. I.C.A. Rule 2.5 (2009). The Court finds that the original Trial Information contained in the Court file was endorsed "A TRUE INFORMATION" by the prosecuting attorney and approved by a district court judge pursuant to Iowa Rules of Criminal Procedure 2.5(2) and 2.5(4). The fact that the copy Mr. Williams received did not bear the signatures of the prosecuting attorney or district court judge is irrelevant. Therefore, the original Trial Information was filed in compliance with Iowa Rule of Criminal Procedure 2.5.

Third, Mr. Williams alleges the State of Iowa failed to formally arraign him. The record does not support Mr. William's claim. The court file contains an Arraignment Order filed on February 20, 2009. The Order does not indicate that Mr. Williams appeared pro se as Mr. Williams argues, but rather, it indicates that Mr. Williams appeared personally and with counsel. While the Order does indicate that Mr. Williams filed a written arraignment, the court file does not contain a written arraignment. The Court finds this discrepancy to be an inadvertent error by the district court judge; the judge should have crossed off the written arraignment language. The error has no bearing on the Court's finding that the State of Iowa arraigned Mr. Williams on February 19, 2009.

Fourth, Mr. Williams alleges the Clerk of Court and judges have deliberately tried to inhibit him from obtaining transcripts of pretrial proceedings. The record does not support Mr. Williams' claim. The court file contains numerous correspondences on the subject. The correspondences repeatedly inform Mr. Williams that no formal record was made at arraignment. The judges and Clerk of Court were not keeping transcripts from Mr. Williams, but rather, there were no transcripts to provide.

Fifth, Mr. Williams alleges the State of Iowa violated his right to speedy indictment under Iowa Rule of Criminal Procedure 2.33(2)(a). The record does not support Mr. Williams' claim. The right to speedy indictment requires indictments to be found within forty-five days of arrest. I.C.A. Rule 2.33(2)(a) (2009). Here, the State of Iowa filed a Trial Information ten days after Mr. Williams' arrest, which is well within the forty-five day requirement. Therefore, the State of Iowa did not violate Mr. Williams' right to speedy indictment.

Sixth, Mr. Williams alleges the State of Iowa violated his right to speedy trial under Iowa Rules of Criminal Procedure 2.33(2)(a) and 2.33(2)(b). The right to speedy trial requires the State of Iowa to bring a criminal defendant to trial within ninety days of indictment, unless the defendant waives this right. IC.A. Rule 2.33(2)(b) (2009). Here, Mr. Williams filed a written waiver of his right to speedy trial before the ninety day deadline. Additionally, the State of Iowa tried Mr. Williams within ninety days of his re-demand of speedy trial. Therefore, the State of Iowa did not violate his right to speedy trial under Iowa Rule of Criminal Procedure 2.33(2)(b). The right to speedy trial also requires the State of Iowa to bring a criminal defendant to trial within one year of arraignment, unless an extension is granted by the court, upon a showing of good cause.

> I.C.A. Rule 2.33(2)(c) (2009). Here, Mr. Williams waived his right to be tried within one year of arraignment before the one year deadline expired. Therefore, the State of Iowa did not violate his right to speedy trial under Iowa Rule of Criminal Procedure 2.33(2)(c).

Doc. No. 23-37 at 2-4.

None of the documents now submitted by Williams amount to "clear and convincing evidence" that the state PCR court's factual findings were erroneous. Nor has Williams demonstrated that the state court's findings were either contrary to or an unreasonable application of federal law. Rather, he argues that the state PCR court's findings were wrong and otherwise re-hashes the arguments made to the state PCR court. As a result, I find that Williams is not entitled to relief on ground two.

### C. *Ineffective Assistance of Trial and Appellate Counsel*

Grounds three and four allege that Williams' trial and direct appeal counsel were ineffective for failing to challenge the alleged errors identified in ground two. Sperfslage argues that the state court reasonably resolved this issue because counsel cannot be found ineffective for failing to pursue meritless arguments.

To establish an ineffective assistance of counsel claim, Williams must show that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Deficient performance" is performance that falls "below an objective standard of reasonableness." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citation omitted). In other words, deficient performance is conduct that failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in habeas proceedings. *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*,

765 F.3d 817, 821 (8th Cir. 2014). However, "strategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Id*. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Richter*, 562 U.S. at 103-05 (citation omitted).

Since a movant must show both deficient performance and prejudice, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining Strickland prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

Williams has failed to show deficient performance by either his trial counsel or his direct appeal counsel. Counsel is not deficient for failing to pursue an argument that is incorrect as a matter of law. *United States v. Cronic*, 466 U.S. 648, 656 n.19 (1984) ("Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical."). As discussed above, Williams' argument regarding procedural errors was wrong. He was properly indicted, arraigned and tried, and objecting to the above alleged errors would have been meritless. As a result, it is not necessary to consider the prejudice prong. Williams is not entitled to relief on grounds three and four.

13

## VI. CERTIFICATE OF APPEALABILITY

A certificate of appealability may be granted only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (citation omitted).

Here, I find that Williams has not made the necessary showing with regard to his habeas claims. As such, I will not grant a certificate of appealability. Should Williams wish to seek further review of his petition, he may request a certificate of appealability from a Judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedeman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## VII. CONCLUSION

For the foregoing reasons, Williams petition (Doc. No. 1) for habeas corpus is **denied**. A certificate of appealability will not issue.

**IT IS SO ORDERED.**

**DATED** this 15th day of May, 2019.

_____
Leonard T. Strand, Chief Judge